**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

KIM M.W.,

                                        Plaintiff,

v.                                                        5:23-CV-00688 (MAD/ML)

MARTIN O'MALLEY,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION, [1]

                                        Defendant.

_____

**APPEARANCES:**                                **OF COUNSEL:**

HILLER COMERFORD                          JUSTIN M. GOLDSTEIN, ESQ.
INJURY & DISABILITY LAW
 _Attorney for Plaintiff_
6000 N. Bailey Ave., Suite 1A
Amherst, New York 14226

SOCIAL SECURITY ADMINISTRATION          FERGUS KAISER, ESQ.
OFFICE OF GENERAL COUNSEL
 _Attorney for Defendant_
6401 Security Boulevard
Baltimore, MD 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

## REPORT-RECOMMENDATION

       This matter was referred to the undersigned for report and recommendation by the

Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with

_____

[1] Martin O'Malley was sworn in as Commissioner of the Social Security Administration on
December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Commissioner Martin O'Malley is substituted for Acting Commissioner Kilolo Kijakazi as the
defendant in this suit.

General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed briefs.  (Dkt. Nos. 11, 13, 14.)  Oral argument was not heard.  For the reasons discussed below, the Court recommends the Commissioner's decision denying Plaintiff's disability benefits be affirmed.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on November 14, 1971.  (Administrative Transcript at 217.[2])  She attended school at least until 10th grade, and later received her GED.  (T. at 266.)  Plaintiff filed for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on June 22, 2021.  (T. at 217, 224.)  She alleges an onset date of November 11, 2020.  (T. at 272.)  In her applications, Plaintiff alleged disability as a result of a left hip injury.  (T. at 265.)  While Plaintiff's claim was pending, she was diagnosed with breast cancer and began chemotherapy treatment on November 30, 2021.  (T. at 353, 702, 725-26.)

Plaintiff's claim was denied at the initial level on July 19, 2021. (T. at 67.)  She submitted a request for reconsideration on July 21, 2021. (T. at 129.)  Plaintiff's claim was denied at the reconsideration level on August 24, 2021. (T. at 96.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on October 4, 2021. (T. at 147.)  ALJ Elizabeth Koennecke conducted the March 23, 2022 hearing, and took testimony from Plaintiff.  (T. at 37-54.)  On April 6, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the SSA.  (T. at 19, 215.)  The ALJ's decision became the final decision of the Commissioner of

---

[2] The Administrative Transcript is found at Dkt. No. 8.  Citations from the Administrative Transcript will be referred to as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns.  All other page references to Docket entries refer to the pages assigned by the Court's CM/ECF electronic filing system.

Social Security when the Appeals Council denied Plaintiff's request for review on April 13, 2023. (T. at 1-6.)  Plaintiff timely commenced this action on June 8, 2023.  (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.  Scope of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013).  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

### B. Standard for Benefits[3]

To be considered disabled, a plaintiff seeking disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

---

[3] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

4

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) whether the claimant has a severe impairment or combination of impairments;
>
> (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments;
>
> (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and
>
> (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (spacing added.); *see also Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets their burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working. *Id.*

### C.  Standard for ALJ Evaluation of Symptoms

In evaluating a plaintiff's residual functional capacity ("RFC") for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term.  SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[4]  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623

---

[4]  The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character."  SSR 16-3p, 81 FR at 14167.  The Court will remain consistent with the terms as used by the Commissioner.

(2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49)

(alterations in original).[5]

      If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ

must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing

superseded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by

considering the record in light of the following symptom-related factors: (1) claimant's daily

activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3)

precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any

medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any

measures taken by the claimant to relieve symptoms; and (7) any other factors concerning

claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3).

      The ALJ must provide specific reasons for the determination. *Cichocki*, 534 F. App'x at

76. However, the failure to specifically reference a particular relevant factor does not undermine

the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id.*;

*see also Del Carmen Fernandez*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*,

285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of

record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at

76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## III.    THE ALJ'S DECISION

      In her April 6, 2022 decision, the ALJ applied the five-step sequential evaluation

---

[5] The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) which was
superseded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The
2016 ruling has removed the emphasis on "credibility."

promulgated by the Commissioner for adjudicating disability claims.  (T. at 11-12.)  As an initial

matter, the ALJ determined that Plaintiff met the insured status requirements of the Social

Security Act through December 31, 2025. (T. at 12.)  At step one, the ALJ determined that

Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (T. at 12-

13.)  At step two, the ALJ determined that Plaintiff suffers from the following severe

impairment: "a left hip impairment, status post debridement surgery."  (T. at 13.)  At step three,

the ALJ determined that Plaintiff does not have an impairment or combination of impairments

that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P,

Appendix 1 ("The Listings").  (*Id*.)

At step four, the ALJ found, based on the above-stated impairment, Plaintiff has the RFC

to perform "the full range of light work." (T. at 14.)  The ALJ determined that Plaintiff would be

able to perform her past relevant work "as a fast-foods worker." (T. at 18.)  Thus, the ALJ

determined Plaintiff has not been under a disability, as defined in the Social Security Act, from

November 11, 2020, until the date of the ALJ's decision, April 6, 2022. (T. at 19.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff argues first that the ALJ erred in finding that Plaintiff's past employment as a

"fast-foods worker" qualifies as "past relevant work" under SSR 82-62. (Dkt. No. 11 at 7-8.)

Plaintiff notes that the record does not contain exact dates of employment for all her prior jobs,

and asserts that her available earning information for at least one job falls below the threshold for

substantial gainful activity ("SGA"). (*Id.* at 8-9.)

Plaintiff next argues that the ALJ erred when she failed to find breast cancer to be a

severe impairment. (*Id.* at 9-10.)  Plaintiff further contends that, even if her breast cancer were

properly found to be a non-severe impairment, the ALJ still failed to appropriately consider the

limitations imposed by the impairment and the necessary chemotherapy treatment. (*Id.* at 11-12.) Plaintiff also argues that the ALJ failed to appropriately consider her symptoms and activities of daily living ("ADLs"). (*Id.* at 12-16.) Finally, Plaintiff argues that the ALJ erred in relying on "stale" opinions from state agency medical consultants. (*Id.* at 16-18.)

Defendant argues first that the ALJ's determination that Plaintiff could return to past work was supported by substantial evidence, and, in any case, the ALJ later offered a step five analysis that showed Plaintiff could perform other jobs existing in significant numbers in the national economy. (Dkt. No. 13 at 7-9.) Defendant further contends that the ALJ found Plaintiff worked more than one job that qualified as "fast-foods worker," and at least one of these jobs qualified as SGA. (*Id.* at 7-8.) Defendant next argues that substantial evidence supports the ALJ's determination that Plaintiff's breast cancer was a non-severe impairment. (*Id.* at 10-12.) Defendant also argues that the ALJ appropriately considered Plaintiff's symptoms and ADLs in crafting the RFC. (*Id.* at 13-15.) Finally, Defendant argues that the state agency consultant opinions were not stale, and that the ALJ appropriately considered them. (*Id.* at 14-15.)

In her reply brief, Plaintiff argues that the ALJ did not demonstrate that her work in the fast food industry was actually performed at the light level, and that her work occurred across different places of employment and in different roles with different duties. (Dkt. No. 14 at 1.) Plaintiff contends that some of her positions never reached the SGA level, and that one of her restaurant positions was "a composite job" that was mischaracterized by the ALJ. (*Id.* at 2.) Plaintiff also contends that the ALJ did not offer a proper alternative analysis at step five, and that if her Step Four analysis is flawed, then remand is warranted. (*Id.* at 2-3.) Plaintiff reiterates that her breast cancer should have been considered a severe impairment, and merited a more thorough review as part of the RFC analysis. (*Id.* at 3-5.)

## V.     THE COURT'S ANALYSIS

### A.  The ALJ's Step Four determination was supported by substantial evidence.

Plaintiff argues that her previous work as a drive-through attendant at Burger King does not qualify as past relevant work for the purposes of the ALJ's analysis at Step Four, because her earnings did not rise to the level of substantial gainful activity. (Dkt. No. 11 at 7-8.)  SSR 82-62, which was applicable at the time that Plaintiff's claim was adjudicated, requires prior work experience to meet a three-prong test to be considered past relevant work.  *See* SSR 82-62, *Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work, In General*, 1982 WL 31386 (Jan. 1, 1982).  The first prong considers whether the work meets the regulatory definition of SGA in 20 C.F.R. §§ 404.1571-1575 and 416.971-975. *Id.*  The second prong imposes a durational requirement, namely, "the length of time during which the person gained job experience," which "depends on the nature and complexity of the work," but must be "sufficient for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation."  *Id.*  Finally, the third prong considers recency, or "the time which has elapsed since the work was performed," noting that work performed more than 15 years ago "could not reasonably be expected to be of current relevance," and will not be considered.  *Id.*

Plaintiff worked two positions relevant to the ALJ's Step Four determination.  (*See* T. at 18.)  As described by the ALJ, Plaintiff worked as "a drive-through attendant at a hamburger restaurant," identified by Plaintiff as Burger King, as well as "similar work at a different restaurant, again as a crew member, but this time working her way up to general manager." (T. at

18, 41, 266.) Plaintiff identified this second restaurant as Little Caesars.[6] (T. at 41.)

The Dictionary of Occupational Titles ("DOT") Job #311.472-010, defines "fast-foods worker" as one who:

> Serves customer of fast food restaurant: Requests customer order and depresses keys of multi-counting machine to simultaneously record order and compute bill. Selects requested food items from serving or storage areas and assembles items on serving tray or in takeout bag. Notifies kitchen personnel of shortages or special orders. Serves cold drinks, using drink-dispensing machine, or frozen milk drinks or desserts, using milkshake or frozen custard machine. Makes and serves hot beverages, using automatic water heater or coffeemaker. Presses lids onto beverages and places beverages on serving tray or in takeout container. Receives payment. May cook or apportion french fries or perform other minor duties to prepare food, serve customers, or maintain orderly eating or serving areas.

DOT #311.472-010, 1991 WL 672682. This job is generally performed at a light level of exertion, with a Specific Vocational Preparation ("SVP") of 2. *Id.* The ALJ categorized both of Plaintiff's prior restaurant positions as "fast-foods worker", although she noted that the job with Burger King was actually performed at the light level and the job with Little Caesars was actually performed at the medium level. (T. at 18.)

Although Plaintiff contends that the exact length of employment is unclear on the record, it is evident that she worked at both restaurant positions for more than one month, meaning the durational prong of past relevant work is met. (T. at 266, 287.) Specifically, Plaintiff worked at a Burger King restaurant in 2012, 2013, and possibly 2014, and worked at a Little Caesars restaurant from 2012 to 2017. (T. at 266, 287.) The recency prong is also met, as both restaurant positions were held within fifteen years of the ALJ's decision. *Id.* Fast-foods worker has an SVP

---

[6] The ALJ also considered Plaintiff's work as a hospital cleaner and nurse assistant, but these positions did not factor into the disability determination. (T. at 18.)

of 2, meaning "[a]nything beyond a short demonstration up to and including 1 month" could be required to obtain proficiency in the position.  DOT #311.472-010, 1991 WL 672682.  Although Plaintiff contends that her series of promotions at Little Caesars rendered the position more of a "composite job" that fell outside the ALJ's limited analysis, this argument is unpersuasive. Plaintiff testified that she began as a crew member at Little Caesars before being promoted within less than a year. (T. 44.)  Therefore, the ALJ had a reasonable basis to conclude that Plaintiff's time as a crew member met the durational requirement to qualify as past relevant work.

Having satisfied these two prongs, the only outstanding question is whether either restaurant position meets the definition of SGA.  In determining whether a claimant's past relevant work constitutes SGA, "primary consideration" should be given to the earnings the claimant derived from the work activity. 20 C.F.R. § 404.1574(a)(1). The regulations provide earnings guidelines that "set a floor for earnings that presumptively constitute substantial gainful activity."  *See Parker v. Astrue*, No. 1:06–cv–1458 (GLS\VEB), 2009 WL 3334341, *3 (N.D.N.Y.2009).  Although earnings below the guidelines will "ordinarily" show that an employee has not engaged in SGA, they are not conclusive on the point, and an ALJ "may consider a claimant's past work, even if the earnings from that work fall below the guidelines." *See Amanda L. v. Saul*, No. 8:18-CV-01221 (NAM), 2019 WL 5865388, at *10 (N.D.N.Y. Nov. 8, 2019) (citing *Parker*, 2009 WL 3334341 at *3).

Plaintiff does not dispute that she met the monthly or annual SGA earnings guidelines during her employment at Little Caesars. (T. at 261, 266, 290.)  As cited by Defendant, POMS DI 10501.015 calculated the minimum average monthly salary to qualify as SGA to equal $1090 in 2015. (Dkt. No. 13 at 9.)  In 2015, Plaintiff earned $19,948.32 while working at Little Caesars,

for an average monthly salary of $1,662.36. (T. at 247). Therefore, the ALJ had substantial evidence to find Plaintiff's work as a fast-foods worker at Little Caesars rose to the level of SGA, and could validly be considered past relevant work. Thus, whether or not it would be error for the ALJ to also find Plaintiff's less lucrative work at Burger King to be SGA, any such error would be harmless.

Moreover, as Defendant correctly notes, even if the ALJ evaluation of Plaintiff's prior work was erroneous, such error would be harmless because she made a number of alternate findings at step five that were supported by substantial evidence. (Dkt. No. 13 at 8-9; *see* T. at 18-19.) Specifically, the ALJ found Plaintiff was 49 at the time of her alleged onset date, "which is defined as a younger individual age 18-49." (T. at 18.) However, Plaintiff "subsequently changed age category to closely approaching advanced age." *Id.* The ALJ noted that Plaintiff has at least a high school education. *Id.* Finally, the ALJ noted that transferability of job skills was not an issue because "applying the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not the claimant has transferable job skills." (T. at 18-19.)

The record before this Court supports the ALJ's analysis. Plaintiff was born on November 14, 1971, and was therefore 50 years old on the date of the ALJ's decision. (T. at 19, 217.) The ALJ's determination that Plaintiff was a "[*p*]*erson closely approaching advanced age*," defined as a person "age 50-54," was correct. 20 C.F.R. § 416.963(d) (italics in original). Plaintiff completed some high school and obtained a GED, which the SSA considers to be the equivalent of a high school education. (T. at 266; *see* Program Operations Manual System ("POMS") DI 25015.010 Education as a Vocational Factor.)

The Medical-Vocational Guidelines, or "Grids" "take administrative notice of the

numbers of unskilled jobs at various exertional levels that exist throughout the national economy." *Guerrero v. Colvin*, No. 16 Civ. 3290 (RJS/AJP), 2016 WL 7339114, at *22 (S.D.N.Y. Dec. 19, 2016). Based on the Grids, the ALJ correctly concluded that a finding of "not disabled" is directed for a claimant with an RFC for light work, who is closely approaching advanced age, and who has a high school education. 20 C.F.R. § 404, Subpart P, Appendix 2 202.13-15. This is true, as the ALJ notes, regardless of transferability of job skills. *Id.*; (T. at 18-19.) The ALJ's alternate finding at Step Five is therefore supported by substantial evidence; any error at Step Four, therefore, is rendered harmless by this additional analysis.

Accordingly, the ALJ's analysis of Plaintiff's prior work does not present grounds for remand.

### B. The ALJ's consideration of Plaintiff's breast cancer and related treatment at step two do not present grounds for remand.

As part of her step two determination, the ALJ found that Plaintiff's diagnosed breast cancer and the resulting chemotherapy treatment did not rise to the level of a severe impairment, stating:

> The claimant was diagnosed with breast cancer in October of 2021. No distant metastases were detected. The claimant began a 6-month course of chemotherapy in anticipation of surgery [citation omitted]. Her chemotherapy is expected to end in April 2022 [citation omitted]. There is as yet no evidence of any specific or quantifiable effects of treatment, such as would be expected to meet the durational requirements of the Regulations. In the absence of such evidence, the claimant's breast cancer does not constitute a "severe" impairment for the purposes of this decision.

(T. at 13.)

Plaintiff testified that she suffered from nausea and diarrhea after her weekly chemotherapy sessions, and experienced weakness, anemia, neuropathy, and a feeling of constantly being sick and tired. (T. at 49-50, 707.) This testimony is consistent with medical

14

records documenting Plaintiff's physical reaction to her initial chemotherapy treatments. (T. 702, 707.) Plaintiff contends that the ALJ failed to properly evaluate the functional limitations imposed by her breast cancer and the necessary chemotherapy treatment, but the ALJ's step two analysis is consistent with the evidence available at the time of her decision.

At her March 2022 hearing, Plaintiff testified that her chemotherapy treatment was expected to end in April 2022, which is consistent with the projected six month timeline found in treatment records from her treating oncologist, Dr. Sam Benjamin. (T. 52-53, 844.) Dr. Benjamin prepared medical opinions in February and March 2022 describing a number of functional limitations that he directly attributed to chemotherapy. (T. at 842-844, 950-952.) Overall, he gave Plaintiff a good prognosis once she completed treatment. (T. 950, 952.) Plaintiff was scheduled for a mastectomy in June 2022, almost two months after the ALJ's decision. (T. at 53, 727.)

Based on the ALJ's accurate recitation of the available record and the burden placed on the Plaintiff at step two, the ALJ had substantial evidence to conclude that Plaintiff's breast cancer and chemotherapy treatment were non-severe impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 ("The claimant . . . bear[s] the burden at step two that [s]he has a medically severe impairment or combination of impairments."); *Laura D. v. Comm'r of Soc. Sec.*, No. 5:21-CV-445 (LEK/TWD), 2022 WL 4181570, at *6 (N.D.N.Y. Sept. 13, 2022), *rep't and rec. adopted*, 2022 WL 4591841 (N.D.N.Y. Sept. 30, 2022). (no basis for remand where "the ALJ's analysis at step two provides sufficient explanation indicating adequate consideration of the evidence related to Plaintiff's alleged impairments, including those he did not find to be severe."). That a reasonable party could reach a different conclusion does not form a basis for remand. *James R. v. Berryhill*, No. 8:17-CV-0675 (CFH), 2018 WL 8996355, at *6 (N.D.N.Y.

Sept. 10, 2018) (where Commissioner's determination is supported by substantial evidence, it must be upheld even where evidence was reasonably susceptive to more than one interpretation).

Moreover, any error in addressing Plaintiff's breast cancer and related treatment would be harmless, because the ALJ still considered Plaintiff's breast cancer in combination with her other impairments as part of her RFC determination. *Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. 2013) (finding alleged step-two error harmless because ALJ considered impairments during subsequent steps). For example, the ALJ noted that family members had assisted Plaintiff with household tasks and appointments while she was receiving chemotherapy; considered Dr. Benjamin's opinion that the chemotherapy had negatively affected Plaintiff's ability to concentrate on tasks and to climb stairs; and noted that Plaintiff's orthopedist postponed necessary hip replacement surgery due to the cancer diagnosis. (T. 15, 17, 45, 858, 950.)

Addressing Plaintiff's other arguments regarding the step two determination, Plaintiff's reply brief points out that Defendant's brief inaccurately suggests that a non-severe impairment is one that "fails to last a continuous period of 12 months duration (unless causing death)." (Dkt. No. 13 at 10; Dkt. No. 14 at 3.) Rather, the relevant inquiry regarding duration of an impairment is whether it has lasted, or *is expected to last*, for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509; 416.909. Resolution of this question does not, on its own, resolve the question of severity. *See Stadler v. Barnhart*, 464 F.Supp.2d 183, 189 (W.D.N.Y. Dec. 11, 2006) ("To state that an impairment is not severe because it does not meet the twelve-month requirement ... is inconsistent with the ... regulations.").

Continuing in a similar vein, Plaintiff contends that the ALJ's language at step two shows

a similarly improper conflation between the severity of her impairments and their duration.  *See, e.g., Alford v. Colvin*, No. 5:12-CV-977 (NAM/CFH), 2013 WL 6839554, at *5 (N.D.N.Y. Dec. 27, 2013) ("Courts, therefore, reverse for legal error SSA decisions that inappropriately conflate the analysis of severity with the analysis of duration.") (internal citations omitted).  While the ALJ's language could have been clearer, the breadth of her analysis at step two shows a proper consideration of the severity and duration of Plaintiff's breast cancer and chemotherapy treatment at the time of her decision, as outlined above.  *See Kirk T. v. Comm'r of Soc. Sec.*, 5:21-CV-292, 2022 WL 2753567, at *8 (N.D.N.Y. Jul. 14, 2022) (noting that an ALJ's "awkward wording" can be ignored when their meaning is clear from context.).  Again, the ALJ appropriately considered the functional limitations imposed by all of Plaintiff's impairments, including breast cancer, as part of the RFC analysis, making any step two error harmless.

Plaintiff's counsel also suggests that the ALJ should have better inquired into whether Plaintiff's breast cancer treatment and the resulting functional limitations could be expected to extend for twelve months or more. (Dkt. No. 11 at 10.)  However, the treatment timeline outlined in the ALJ's decision was based upon information from Plaintiff's treating oncologist and Plaintiff's testimony, not the ALJ's lay opinion.  Beyond speculation, Plaintiff's counsel has not identified any gaps in the record at the time the ALJ issued her decision.  Furthermore, Plaintiff's representative at the administrative level and Plaintiff's counsel in this proceeding had an opportunity to offer new evidence that would call the ALJ's step two determination into question, and did not do so.  *See, e.g.*, *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (setting out three-part test for consideration of new evidence).

Accordingly, the ALJ's step two determination does not present grounds for remand.

### C. The ALJ properly considered Plaintiff's symptoms and activities of daily living.

Plaintiff argues the ALJ erred by failing to properly assess Plaintiff's symptoms. (Dkt. No. 11 at 12.)  Plaintiff testified at the administrative hearing that "[s]tanding and walking is very hard," that she experiences "neuropathy in [her] legs and hands," "a lot of pain in the hip" so that "even just sitting" causes pain, that she has difficulty with stairs, "can't walk more than a block without extreme pain," and that the pain spreads to her back. (T. at 46-47.)  As discussed above, Plaintiff also testified regarding her reaction to chemotherapy treatments, including fatigue, neuropathy, anemia, and nausea. (T. at 49.)

In her Function Report, Plaintiff testified to an inability to lift more than ten pounds. (T. at 295.)  She reported cleaning, sweeping, mopping, and doing dishes. (T. at 296.)  She takes care of her dog, which requires her to walk up and down a flight of stairs three times a day.  *Id.* She reported needing assistance with laundry, because she cannot lift her basket on her own, and she can no longer perform yard work.  (T. at 297.)  She reported that she shops for groceries, dog food, and household supplies, but noted that she shops online as well as in person.  (T. at 298.)  She stated that her only hobbies are "coloring, word search, solitaire, [and] watching TV," because she cannot do anything else.  (T. at 299.)  She reported that she only socializes over the phone.  *Id.*

The ALJ determined that Plaintiff's pain and other symptoms could be caused by a medically determinable impairment, but stated that "the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (T. at 14.)  The ALJ concluded that "[t]he record indicates that the claimant is limited by her impairments, but not to a disabling extent."  (T. at 15.)  In reaching this conclusion, the ALJ relied on physician observations during a February 2021 physical

18

examination during which Plaintiff presented with no distress, walked with a normal gait, exhibited no tenderness, and had mildly reduced hip movement with normal motor strength, sensation, and coordination. (T. at 15, 436.) The ALJ noted that Plaintiff's "gait deteriorated somewhat later during 2021, but she needed no assistive devices to walk, either before or after surgery." (*Id.* (citing T. at 440, 443, 851.))

The ALJ noted that Plaintiff "required no recurrent emergency department visits, urgent care visits, or prolonged hospitalizations for uncontrolled pain." *Id.* Plaintiff also exhibited only mild restriction in hip range of motion at a December 2021 examination. (*Id.* (citing T. at 858.)) The ALJ noted that Plaintiff is "able to live independently," including "cooking, cleaning, sweeping, mopping, and washing dishes" alone, as well as "walking her dog three times a day, an activity that required traversing a flight of stairs." (T. at 15.) The ALJ also considered the facts that Plaintiff "continued working at the nursing home for 90 days, performing light duty work" after her accident, lifting "no more than 20 pounds," and that "she was able to tolerate this reduced physical activity level." (T. at 16 (citing T. at 433, 859, 907.)) Indeed, Plaintiff testified that she likely still be working at this position if her employer had continued to offer her light duty. (T. at 51.) This testimony would appear to endorse the ALJ's ultimate RFC determination of light work. (T. at 14.)

The ALJ also considered Plaintiff's receipt of unemployment benefits, which required her to "actively apply[] for work, claim[] to be available for work, and [hold] herself out to another agency as able and willing to work." (T. at 16, 256-57.) In doing so, the ALJ noted that unemployment programs and Social Security "differ in policy goals, regulations, and acceptance criteria," and so "[a]cceptance of unemployment benefits does not directly impact a medical determination of disability." *Id.* Receipt of unemployment benefits is not dispositive of a

claimant's ability to work, but an ALJ can choose to weigh it during their assessment of a claimant's symptoms. *See Carol Ann T. v. Comm'r of Soc. Sec.*, No. 20-CV-453 (GLS), 2021 WL 3165353, at *3 (N.D.N.Y. July 26, 2021) (citing *Maryellen D. v. Berryhill*, No. 17-CV-2940 (BKS), 2018 WL 4627664, at *12 (N.D.N.Y. Sept. 27, 2018)). Here, the ALJ properly considered it as one factor in the RFC analysis.

The ALJ's consideration and discussion of the relevant evidence is extensive, and her conclusions are not so unavailing that "'a reasonable factfinder would have to conclude otherwise.'" *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Diaz v. Shalala*, 683 F.3d 443, 448 (2d Cir. 2012)). "When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'" *Warren v. Comm'r of Soc. Sec*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016).

### D. The ALJ did not rely on stale medical opinions.

Plaintiff argues that the state agency consultant opinions of Dr. Auerbach and Dr. Waldman are stale, and the ALJ's reliance on them erroneous. (Dkt. No. 11 at 16-17.) Dr. Auerbach's opinion is dated July 19, 2021, meaning that the most recent information available to Dr. Auerbach was Plaintiff's Function Report, received July 15, 2021. (*See* T. at 58, 64.) Dr. Waldman's opinion is dated August 24, 2021, meaning that the most recent records available to Dr. Waldman were records from the New York Workers' Compensation Board. (T. at 84, 95.)

These available records included Plaintiff's June 2021 arthroscopic hip surgery, but both opinions pre-dated Plaintiff's cancer diagnosis and chemotherapy treatment.

By itself, "[a] gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion." *Majdandzic v. Comm'r of Soc. Sec.*, No. 17-CV-1172, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018). Instead, there must be a "meaningful change" in plaintiff's condition after the opinion was rendered. *Lamar v. Comm'r of Soc. Sec.*, No. 18-CV-829, 2020 WL 548376, at *3 (W.D.N.Y. Feb. 4, 2020); *see also Maxwell H. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0148 (LEK/CFH); 2020 WL 1187610, at *5 (N.D.N.Y. March 12, 2020) (holding that a consultative opinion may become stale "if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision.").

The ALJ's decision demonstrates that she did not rely on the consultants' opinions alone in crafting the RFC determination, but considered the longitudinal record that included Plaintiff's October 2021 cancer diagnosis and the December 2021 postponement of a scheduled hip replacement surgery. (T. 725, 858.) "[R]emand is warranted where more recent evidence in the record 'directly contradict[s] the older reports of [claimant's] functioning on which the ALJ relied' and the ALJ failed to analyze the more recent evidence." *Laura Anne H. v. Saul*, 6:20-CV-397 (TWD), 2021 WL 4440345 at *6 (quoting *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642 (2d Cir. 2020)). That is not the case here. The ALJ's RFC determination includes an analysis of evidence post-dating the consultants' opinions, including examination reports showing Plaintiff "needed no assistive device to walk, either before or after surgery; (T. at 15, 440, 443, 851) and "continued to present for care in no distress." (T. at 15, 851, 854, 858). The ALJ also noted that, on examination in January of 2022, Plaintiff had "no tenderness upon

palpation of the pelvis, hip, or thigh. No swelling or crepitation with hip movement …"  (T. at 15, 858.)  Although Plaintiff experienced "diffuse weakness," the ALJ noted that her medical providers observed "no discrete motor loss," and "only a mild restriction in hip motion."  *Id.*

As set forth above, the ALJ conducted a thorough, independent review of the medical opinions, the objective medical evidence, and Plaintiff's testimony.  Therefore, the ALJ's recognition of the consultants' opinions as persuasive does not present grounds for remand.

## VI.     CONCLUSION

Considering the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports her determination that Plaintiff was not under a disability within the meaning of the Social Security Act.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED** and Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **GRANTED** and the complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  September 9, 2024
          Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge